JAMES JOSEPH TAYLOR *v.* STATE
OF MARYLAND

[No. 444, September Term, 1968.]

*Decided August 19, 1969.*

The cause was argued before MURPHY, C. J., and ANDERSON, MORTON, ORTH, and THOMPSON, JJ.

*James S. Gardiner* for appellant.

*John J. Garrity, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Arthur A. Marshall, Jr., State's Attorney for Prince George's County,* and *Raymond F. Ciarrocchi, Assistant State's Attorney for Prince George's County,* on the brief, for appellee.

ANDERSON, J., delivered the opinion of the Court.

The issue before the Court in this appeal concerns the circumstances under which a criminal accused should be allowed to withdraw a plea of guilty.

The appellant, James Joseph Taylor, was charged by criminal informations with having passed two worthless checks in violation of Md. Code, Art. 27, § 142 (1968 Cum. Supp.). That Code section in pertinent part provides:

> "Every person who, with intent to cheat and defraud another, shall obtain money, credit,

goods, services . . . or anything of value, five hundred dollars or more, by means of a check, draft or any other negotiable instrument of any kind drawn . . . upon any bank, person, firm, or corporation not indebted to drawer, or where the drawer or drawers thereof shall not have provided for the payment or acceptance, . . . and the same be not paid upon presentation, shall be deemed to have obtained such money, credit, goods, services . . . or things of value by means of a false pretense. . . . The giving of the aforesaid worthless check, draft or negotiable instrument . . . shall be *prima facie* evidence of intent to cheat or defraud . . ."

The appellant allegedly violated that section when he gave two checks, one in the amount of $1813.75 and the other in the amount of $2500.00, to Standard Pontiac, Inc., in exchange for an automobile. The checks were dishonored upon presentment to the bank on which they were drawn.

When the cases were called for trial in the Circuit Court for Prince George's County, Judge Samuel W. H. Meloy presiding, the appellant's then counsel stated to the court that the appellant desired to enter a plea of guilty to both charges. Judge Meloy questioned the appellant personally; and upon the appellant stating that he did not think he was guilty the court refused to enter a plea of guilty. The court recessed for ten minutes after which appellant's attorney said to the court:

"If your Honor please, for the record, to kind of clarify what took place before your Honor took a recess, I have discussed the matter thoroughly before today with my client. I am very familiar with the facts with my own independent investigation and from what my client told me, and I have discussed the matter with him, I would say, no fewer than a dozen occasions,

and I am thoroughly familiar with the facts in the case from what he has told me and my own independent investigation.

"When your Honor asked him the question was he pleading guilty because he was guilty and for no other reason, your Honor, I explained to my client what that meant and his hesitating before. The facts would reveal, of course, when he gave the checks he knew that he did not have the money in the bank to cover the checks, which, of course, under the law is *prima facie* evidence of the intent. He thought that he was going to get the money from a third person to cover the checks by the time they cleared. I explained to him this made him guilty under the law, and he, understanding that now, would like to enter a plea of guilty. This is my understanding."

The court then extensively questioned the appellant. The appellant acknowledged that he had received a copy of the informations, that he had read them and that he understood them; that he had ample opportunity to discuss with his attorney the allegations contained in the informations; that he understood that the minimum sentence was two years and the maximum sentence was ten years; that he understood that if he chose to plead not guilty he would be afforded a speedy and public trial by jury or by the court, the right to confront the witnesses against him, the right to use judicial process to compel the attendance of witnesses on his behalf, and the right to be represented by competent and able counsel throughout all stages of the proceedings; that no one had offered him any inducement or promise of leniency or probation if he pled guilty; that no one had applied any duress, force or intimidation to make him plead guilty; that he believed his attorney understood what he (appellant) had told him about the facts and circumstances concerning the allegations and that his attorney had done everything pos-

sible for him up to the present time. The appellant then was asked by the court, "Are you pleading guilty because you are in fact guilty?," to which the appellant responded, "Yes, sir." The court then conducted an examination of the appellant's attorney regarding whether the attorney believed that the plea was voluntarily and understandingly made. The court then accepted the plea of guilty and set a sentencing date.

The case came on for sentencing before Judge Ernest A. Loveless, Jr., in the Circuit Court for Prince George's County. At this hearing the appellant moved to withdraw his plea of guilty. Sentencing was deferred and the motion set down for hearing.

The motion was heard before Judge William B. Bowie in the Circuit Court for Prince George's County. In support of the motion, appellant argued that he never had the requisite intent to cheat or defraud. After hearing argument the court denied the motion. The court stated:

> ". . . the transcript of proceedings of May 17, 1968, before Judge Meloy, clearly and fully and completely shows that the defendant knowingly and intelligently understood the nature of his plea of guilty and pleaded at that time. There wasn't any question about that in the Court's mind in reviewing the questions.
>
> "Certain questions have been suggested to the Court through the American Bar Association and through our Administrative Office of the Court, certain questions to be asked of defendants before we will accept their pleas. And I know, in reviewing the testimony that was taken before Judge Meloy, that the crux of these questions was covered and inquiry made of the defendant at that time, and no question in the Court's mind but what it was intentionally and knowledgeably and understandingly taken on May 17th before Judge Meloy in this Court."

The appellant was then sentenced to concurrent terms of three years under the jurisdiction of the Department of Correction.

Upon this appeal the appellant contends that the court abused its discretion in denying the motion to withdraw the plea of guilty as the plea was not made "under circumstances showing . . . an intelligent understanding of the nature of the offense to which he is pleading guilty . . ." *Duvall v. State,* 5 Md. App. 484, 486 (1968).

Maryland Rule 722 provides:

> "The court may strike out a plea of guilty at any time and enter a plea of not guilty, if it deems such action in the interest of justice."

Whether or not the power to strike the guilty plea is to be exercised is largely one of discretion and it has been held, for instance, that even a showing that there may have been a defense raised to the crimes charged does not, of itself, make an entry of a guilty plea ineffective. *Palacorolle v. State,* 239 Md. 416, 420-21 (1965). In the instant case the appellant, who the record reveals was a 31 year old man with two years of college, does not seem to have been misinformed by his then attorney with respect to the elements of the crime. He unequivocally stated to Judge Meloy that he did understand the charges against him (the informations charged him with obtaining the car "with intent then and there to defraud"). It is quite clear that appellant gave a "worthless check" within the meaning of the statute because he had not "provided for its payment or acceptance." See Md. Code, Art. 27, § 142, quoted *supra.* The giving of the worthless check was, by the terms of the statute, *prima facie* evidence of the intent to cheat or defraud. At most the appellant's later allegation that he never intended to cheat or defraud Standard Pontiac, Inc. raised the possibility that he may have had a defense to the charges had the cases gone to trial. The success of the defense would have depended, of course, on the weight given to the evidence

by the trier of fact and its judgment as to the credibility of the witnesses. In *Cashdan v. Warden,* 5 Md. App. 402 (1968) a question similar to that raised here was raised by an applicant for post-conviction relief. We held that the hearing court which denied relief was justified in finding that the trial court had not abused its discretion in refusing to permit the plea of guilty to be stricken. Our decision in *Cashdan* provides guidance in the instant case and urges us to a similar result. Upon all the circumstances of this case we believe that the record demonstrates that appellant's plea was entered freely, voluntarily, and with an intelligent understanding of the nature of the offense to which he pled guilty. The court did not abuse its discretion in denying the motion to withdraw the plea.

*Judgments affirmed.*