54

## TONY WITHERSPOON *v.* STATE OF MARYLAND

[No. 678, September Term, 1974.]

*Decided May 5, 1975.*

The cause was argued before ORTH, C. J., and MASON, J. and IRVING A. LEVINE, Associate Judge of the Court of Appeals, specially assigned.

*Michael E. Kaminkow, Assigned Public Defender,* for appellant.

*Alexander Cummings, Assistant Attorney General,* with whom were *Francis B. Burch, Attorney General, Milton B. Allen, State's Attorney for Baltimore City* and *Mark Van*

*Bavel, Assistant State's Attorney for Baltimore City,* on the brief, for appellee.

LEVINE, J., delivered the opinion of the Court.

This appeal is from judgments of conviction in two cases in which the trial judge (Sklar, J.) accepted pleas of guilty entered by appellant. In one case, appellant was charged with rape, assault and battery, and assault with intent to rape; he pleaded guilty to the latter. In the other case, he was charged with assault and battery, larceny, receiving stolen goods, and robbery; he pleaded guilty to the robbery charge. The court sentenced appellant to a term of 15 years on the assault with intent to rape conviction and to a term of 10 years on the robbery charge, the two terms to be served consecutively.

The charges arose out of an attack upon a blind female passenger who had entered a taxicab occupied by appellant and a male accomplice. The victim had been placed in the taxicab by a companion apparently on the assumption that one of the male occupants was the regular operator of the vehicle, and that the other was either a passenger or a friend of the driver. Actually, the two males had stolen the cab from the parking lot of the owner.

After driving some distance in the cab, the males attacked the passenger, but despite a vicious effort, were unsuccessful in having sexual intercourse with her. They did, however, remove the sum of $22 from her purse. Following his arrest, appellant made a statement to the police in which he admitted being present in the taxicab, but denied participating in the assault or the robbery. A pretrial motion to suppress that statement, bottomed on *Miranda v. Arizona,* 384 U. S. 436, 86 S. Ct. 1602, 16 L.Ed.2d 694, 10 A.L.R.3d 974 (1966), was denied by Judge Sklar.

Following the ruling on the statement, plea bargaining ensued between the prosecutor and counsel for appellant during a recess in the trial. Those negotiations led to the two pleas mentioned earlier. Before the tendered pleas were accepted, however, appellant was closely examined by both

his attorney and the court. Among the subjects of this inquiry were appellant's awareness *vel non* of the constitutional rights at stake in the guilty plea and his understanding of the maximum sentences which could be imposed in consequence of the two convictions. Then, the prosecutor made a detailed proffer of what the State would prove to establish the corpus delicti and appellant's criminal agency. The proceedings concluded with the court's acceptance of the guilty pleas. Disposition was deferred to a later date so that a presentence report could be obtained.

On appeal, these contentions are advanced:

1. That error was committed because of the State's failure to make a recommendation at the time of sentencing as required by the plea bargain; and that this was compounded by the failure of the record "to adequately and completely reflect the plea bargain."

2. That appellant lacked an intelligent understanding of either the nature of the offenses to which he pleaded guilty or the possible consequences of his plea.

3. That error occurred in light of "appellant's failure to admit the conduct comprising the charge," his denial of guilt to the police, and the tender of his plea against the advice of counsel.

### (1)

While appellant was being interrogated by his counsel in open court regarding his tendered plea, it became readily apparent — as the record clearly discloses — that the plea of guilty to the assault with intent to rape charge had been offered on the condition that the State would recommend to the court that a maximum sentence of 15 years be imposed on that charge. It is equally clear from the record that the court was cognizant of this agreement, but cautioned appellant that it was not bound by that recommendation and could impose a maximum sentence of life imprisonment. Moreover, appellant acknowledged that he fully understood the court's admonition.

Also, with respect to the robbery charge, the court was

aware that the State had agreed to make no recommendation, and drew from appellant an acknowledgment that he understood the maximum punishment for this charge to be 10 years. Finally, the court pointedly stated to appellant that even if it were to abide by the State's recommendation regarding the assault with intent to rape charge, respective sentences of 15 and 10 years could be imposed *consecutively*. In the company of his father and grandmother, appellant expressed his understanding of these possibilities.

Notwithstanding the extreme care exercised by the trial court, appellant now complains because the State failed to explicitly recommend that the court impose no more than a 15 years' sentence on the assault charge. The short answer to this contention is that even if it be assumed that the State failed to make that recommendation, the court became fully aware of the agreement and, though not required to do so, abided by it.

Thus, appellant's heavy reliance on *Santobello v. New York*, 404 U. S. 257, 92 S. Ct. 495, 30 L.Ed.2d 427 (1971), is seriously misplaced. There, the prosecutor's office, despite an agreement to make no recommendation, urged successfully that the maximum penalty of one year be imposed for a gambling violation. Nor is the situation here the same as it was in *Miller v. State*, 272 Md. 249, 322 A. 2d 527 (1974), where the state agreed to make no recommendation, and then argued successfully against the suggestion contained in the presentence report that conditional probation be granted. Holding that the "plea bargain" had been breached, the Court of Appeals vacated the five years' sentence and remanded the case for further proceedings. *See Wynn v. State*, 22 Md. App. 165, 170-71, 322 A. 2d 564 (1974).

Unlike *Santobello* and *Miller*, here there was no breach of the agreement which led to the guilty pleas.

(2)

In support of his contention that he lacked an intelligent

understanding of either the nature of the offenses to which he pleaded guilty or the possible consequences of his plea, appellant argues that the record "is silent as to whether an explanation of the offenses to which [he] was pleading guilty was given either by counsel or by the court." He indicates that he was merely informed of the "legal names" of the crimes to which he pleaded guilty. Hence, being a 15 year old 8th-grade student, he "could not have had the requisite 'intelligent understanding of the nature of the offenses' " mandated by *Williams v. State*, 10 Md. App. 570, 271 A. 2d 777 (1970). He also relies on *Duvall v. State*, 5 Md. App. 484, 248 A. 2d 401 (1968), in which we held that a guilty plea to the charge of escape was not satisfactorily shown to be freely and intelligently entered where the record failed to establish whether the accused understood the nature of the charge.

There is no merit in appellant's contention. First, he places a gloss on *Duvall* which is not borne out by a careful reading of that case. Our concern there was not merely with the nature of the charge, but also with "the possible consequences of a plea of guilty, particularly as to the length of the sentence that could be imposed . . . ." 5 Md. App. at 487. Secondly, although the prosecutor made a statement indicating Duvall's guilt of the offense charged in the indictment, the record there failed to show "that any inquiry was made, either by the court or by defense counsel, as to whether [Duvall] understood the nature of the charge . . . ." *Ibid.*

Here, the record is vastly different. At the commencement of the proceedings, while being arraigned, appellant signified that he was familiar with the indictments which had just been read to him. Moreover, the hearing on his motion to suppress, which consumed an entire day, was punctuated with references to the events forming the basis for the charges. In the course of that hearing, the police officer related the questions and answers which were the disputed object of the motion. The responses which had been furnished to those questions by appellant graphically dispel any notion that he lacked an intelligent understanding of the nature of either assault with intent to rape or robbery. The

entire process was virtually repeated later when the prosecutor read the detailed summary of the State's case, which he proffered to establish a strong factual basis for the plea. Clearly then, appellant possessed an intelligent understanding of the nature of the offenses at the time he tendered his plea. *Beasley v. State,* 17 Md. App. 7, 14-15, 299 A. 2d 482 (1973), *cert. denied,* 268 Md. 745 (1973).

What we said earlier completely disposes of any possible contention that appellant did not fully understand the consequences of his guilty plea.

(3)

In *North Carolina v. Alford,* 400 U. S. 25, 91 S. Ct. 160, 27 L.Ed.2d 162 (1970), the Supreme Court held that despite the professed belief of the accused in his innocence, his guilty plea was not constitutionally infirm where there was a strong factual basis for the plea and a clearly expressed desire to enter it. The Court recognized that "[w]hether he realized or disbelieved his guilt, [Alford] insisted on his plea because in his view he had absolutely nothing to gain by a trial and much to gain by pleading." 400 U. S. at 37. Notwithstanding, *Alford* and our subsequent decision in *Williams v. State,* 10 Md. App. 570, 271 A. 2d 777 (1970), *cert. denied,* 261 Md. 730 (1971), appellant argues here that his plea was invalid because the record fails to disclose his "motive" for pleading guilty. This defect, he says, was compounded by his insistence on pleading guilty against the advice of counsel.

As we noted earlier, the *Alford* requirement was met here, since a strong factual basis for the plea appears in the record. The contention that appellant's reason for entering the plea is not revealed contrary to *Alford,* where the accused wished to avoid a more severe punishment, is patently without merit. If a protestation of innocence will not invalidate a plea of guilty, it should follow *a fortiori* that a mere failure to expressly admit guilt will not do so. *North Carolina v. Alford, supra,* 400 U. S. at 37. Given a tendered plea of guilty supported by a strong factual basis, neither

*Alford* nor any Maryland cases impose a requirement upon the trial judge to elicit from the accused his motive for the plea. *Cf. Howard v. State,* 18 Md. App. 44, 48, 304 A. 2d 853 (1973), *cert. denied,* 269 Md. 759 (1973).

Nor does the failure of counsel to approve the decision of the accused to plead guilty annul the plea if it comports with constitutional standards. As we have indicated, the plea here does so.

*Judgments affirmed.*